UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                              :
                                                    :      Chapter 7
    A. JAYE POMERANCE           :      Case No. 10-12287 (SMB)
                                                    :
                 Debtor.    :
------------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER DENYING DEBTOR'S
MOTION TO RESTORE DEBTOR TO POSSESSION OF PREMISES,
GRANTING LANDLORD'S CROSS-MOTION TO ANNUL THE
AUTOMATIC STAY AND CLOSING THE CASE**

**A P P E A R A N C E S:**

A. JAYE POMERANCE
Debtor <u>Pro Se</u>
145 East 16th Street
Apt 15-B
New York, NY 10003

BORAH, GOLDSTEIN, ALTSCHULER, NAHINS
  & GOIDEL, P.C.
Attorneys for 145 East 16th Street LLC, Landlord
377 Broadway
New York, New York 10013-3993

       Jeffrey Chancas, Esq.
          Of Counsel

**STUART M. BERNSTEIN
United States Bankruptcy Judge:**

       The debtor A. Jaye Pomerance (the "debtor") was been evicted from an apartment located

at 145 East 16th Street, Apartment 15-B, New York, New York 10003 (the "Apartment").

Claiming that the eviction violated the automatic stay, she seeks to be restored to possession of

the Apartment and the return of certain personal property that had been located at the Apartment

and is now held in storage. (See Order to Show Cause to Restore to the Debtor Possession of the Premises and Her Belong[ing]s, dated Mar. 16, 2011 (ECF Doc. # 17).)[1] The Landlord opposes the motion and asks the Court to annul the automatic stay to the extent necessary to validate the eviction.[2] For the reasons that follow, the debtor's motion is denied and the automatic stay is annulled.

**BACKGROUND**

The debtor filed a voluntary chapter 7 petition (the "Petition") on April 29, 2010, listing the Apartment as her home address. At the time, and for some time thereafter, Pomerance resided at the Apartment with Elliot Tash, also known as David Elliot Tash. Tash was the named tenant on the rent stabilized lease pertaining to the Apartment. (Goldman Aff. ¶¶ 2, 5.) Although the debtor listed a monthly rental expense of $1,000, (Petition, Schedule J), she did not schedule any unexpired leases or subleases, (id., Schedule G), or list any interest in the Apartment.

While the chapter 7 case was pending, the Landlord commenced a summary nonpayment proceeding against Tash and the debtor, as undertenant (incorrectly naming her "Pomerand").[3] (Goldman Aff. ¶ 5; Chancas Aff., Ex. 8.) At a November 5, 2010 hearing, the Debtor appeared

---

[1] Unless otherwise noted, all ECF Doc. #s refer to Case No. 10-12287.

[2] The Landlord's opposition consists of several affidavits and exhibits bundled into one pleading docketed as ECF Doc. # 24. The affidavits include the Affidavit of Jeffrey Chancas in Opposition to Order to Show Cause to Restore the Debtor to Possession of Premises, sworn to March 23, 2011 ("Chancas Aff."), the Affidavit of George G. Essock, sworn to March 21, 2011 ("Essock Aff."), the Affidavit of Mazantu Rabayeva, sworn to March 21, 2011 ("Rabayeva Aff.") and the Affidavit of Jeffrey M. Goldman, sworn to March 21, 2011 ("Goldman Aff."). The exhibits will be cited as exhibits to Mr. Chancas' affidavit.

[3] The Civil Court corrected the error in its November 29, 2010 Decision/Order. (Chancas Aff., Ex. 1.)

as an attorney for Tash and herself,[4] (Goldman Aff. ¶ 8), and never mentioned that she was a debtor in a pending bankruptcy proceeding. (Id. ¶ 9.) After an extensive settlement conference, Tash and the debtor left the courtroom to consider the offer, but never returned. In a Decision/Order of that day, the Civil Court awarded a monetary judgment in favor of the Landlord against Tash for certain disputed amounts as well as a judgment of possession on default. (Chancas Aff., Ex. 10.)

The parties next appeared in the Civil Court on November 29, 2010. At the hearing, Tash discharged the debtor as his attorney. (Goldman Aff. ¶ 10.) Among other things, the Civil Court's Decision/Order of that date, (Chancas Aff., Ex. 11), awarded judgment in favor of the Landlord against Tash in the sum of $16,275.25 in back rent, but did not award damages against the debtor because she was not in privity of contract with the Landlord. The court also awarded possession to the Landlord, and stayed the issuance of the warrant of eviction for five days. The debtor again failed to mention her pending bankruptcy. (Goldman Aff. ¶ 10.) Coincidently, the Bankruptcy Court issued the debtor's discharge and closed her chapter 7 bankruptcy case at 2:41 p.m. that same day. (Order of Discharge and Order of Final Decree, dated Nov. 29, 2010 (ECF Doc. # 11).) The automatic stay terminated when the case was closed. 11 U.S.C. § 362(c)(2)(A).

A warrant of eviction issued on February 4, 2011, (Chancas Aff., Ex. 3), and a New York City Marshal executed the warrant on March 9, 2011. (Essock Aff. ¶ 5.) The debtor told the

---

[4] Pomerance was admitted to practice in New York in 1988 and was licensed through November 2010. (Chancas Aff., Ex. 15.)

3

City Marshal that she had previously filed for bankruptcy in 2010 but that the stay had already been lifted. (Id. ¶ 6.) This was the first time that the City Marshal had any notice that the debtor had filed for bankruptcy. The City Marshal prepared an inventory of Tash's and the debtor's property, (Chancas Aff., Ex. 4), and it took three days for a moving company hired by the Landlord to remove all of the contents of the Apartment. (Rabayeva Aff. ¶ 4.) The contents are currently being stored by Signature World Wide Relocation Inc. in West Haverstraw, New York. (Chancas Aff., Ex. 6.)

Immediately following the eviction, the debtor obtained an Order to Show Cause, dated March 9, 2011, from the Civil Court seeking to halt the removal of the contents of the Apartment and grant her the opportunity to enter the Apartment and reclaim her possessions. (Chancas Aff., Ex. 13). The debtor's supporting affidavit did not mention a bankruptcy stay; instead, it stated that she had filed a motion to reopen her bankruptcy case. (Id.) The Civil Court denied her motion on March 11, 2011, ruling that the debtor's claims for restoration based on an "intention to file a petition for bankruptcy and a defense based upon illusory tenancy" were not supported by the record. (Chancas Aff., Ex. 14.)

Unsuccessful in the Civil Court, the debtor pursued relief in this Court through the aforementioned motion to reopen her chapter 7 case and stay certain actions against her property. (Motion to Reopen Case, dated Mar. 9, 2011 (ECF Doc. # 13).) The Court scheduled a hearing for March 15th, and signed an order staying all parties from taking possession of, interfering with or exercising control over the debtor's property in the interim. (Order Scheduling Hearing and Staying Certain Actions Against the Debtor and Her Property, dated Mar. 11, 2011 (ECF Doc. # 14).) The order was served by my Courtroom Deputy on the Landlord by fax on March 14th at 7:35 a.m. (ECF Doc. # 19.) Following the March 15th hearing, the Court reopened the

4

case and reinstated the automatic stay. (Order Reopening Case and Reinstating the Automatic Stay, dated Mar. 15, 2011 (ECF Doc. # 15).)

As noted at the outset, Pomerance has now moved to be restored to possession of the Apartment and her personal property on the grounds that the Landlord violated the automatic stay by seeking to evict her from the Apartment while she was in bankruptcy. The Landlord argues that the automatic stay did not apply to the summary proceeding. (Chancas Aff. ¶ 15.) Alternatively, if the Court finds that the eviction was stayed by the automatic stay, the Landlord asks the Court to annul it retroactively. (Id. ¶ 16.)

## DISCUSSION

The automatic stay, 11 U.S.C. § 362(a), is "one of the fundamental debtor protections provided by the bankruptcy laws." H.R. Rep. No. 95-595, at 340 (1977); accord Eastern Refractories Co. v. Forty Eight Insulations Inc., 157 F.3d 169, 172 (2d Cir. 1998). It is effective immediately upon filing without further action, id.; Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 527 (2d Cir. 1994), and actions taken in violation of the automatic stay are void. See 48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.), 835 F.2d 427, 431 (2d Cir. 1987), cert. denied, 485 U.S. 1035 (1988).

It is far from certain that the Landlord's actions prior to November 29, 2010 to dispossess the debtor even violated the automatic stay. The Landlord did not sue the debtor to collect a pre-petition claim and did not seek or obtain a money judgment against the debtor. Furthermore, the debtor was not the tenant of record and did not have a sublease with the tenant of record. Instead, she was a mere roommate, and without more, did not have an interest that the automatic stay protected. Griggs v. 25 Realty Assocs., L.L.C. (In re Griggs), No. 02 Civ. 619 (NRB), 2002

5

WL 523391, at *2 (S.D.N.Y. Apr. 5, 2002); In re Blaylock, 301 B.R. 443, 450 (Bankr. E.D. Pa. 2003).

The debtor has nonetheless argued that she was an "illusory" tenant within the meaning of the New York Rent Stabilization Law.[5] As such, she might be entitled to possessory rights or a renewal lease. She implies that her eviction cut off those rights, and hence, the proceedings leading to her eviction violated the automatic stay.

In deciding whether an "illusory" tenancy exists, the Court should consider several factors. These include: (1) did the prime tenant ever occupy or intend to occupy the premises for residential use; (2) did the prime tenant exercise dominion and control over the apartment; (3) did the prime tenant and the landlord collude in the scheme or did the landlord have constructive knowledge of it; (4) did the subtenant reasonably expect to continue in possession indefinitely as a rent-regulated tenant when the sublease ended; and (5) did the prime tenant profit by overcharging the subtenant? Art Omi, Inc. v. Vallejos, 832 N.Y.S.2d 915, 919 (N.Y. City Civ. Ct. 2007), aff'd, 873 N.Y.S. 231 (N.Y. Sup. Ct. App. T. 2008). Although the debtor implies that Tash overcharged her (and worse, did not pay rent to the Landlord), the remaining factors line up against an "illusory" tenancy. Tash, the tenant of record, lived in the Apartment and exercised dominion and control over it. The debtor argues that he moved out before the eviction, but the City Marshal's inventory taken in March 2011 at the time of the eviction indicated that Tash still had property in the Apartment. At any rate, Tash's departure prior to the actual eviction does not

---

[5] "An illusory tenancy exists where the rent laws have been violated in a way that has permitted the prime tenant to 'rent [the apartment] for the purpose of subleasing for profit or otherwise depriving the subtenant of rights under the Rent Stabilization Law.'" Primrose Mgmt. Co. v. Donahoe, 676 N.Y.S.2d 585, 587 (N.Y. App. Div. 1998) (quoting Avon Furniture Leasing, Inc. v. Popolizio, 500 N.Y.S.2d 1019, 1021 (N.Y. App. Div. 1986)).

support the finding that he rented the Apartment to the debtor to circumvent the Rent Stabilization Laws, and there is no evidence that the Landlord had actual or constructive knowledge of Tash's alleged scheme to overcharge the debtor.  Additionally, the Landlord did not collude with Tash since it obviously wanted both Tash and the debtor out of the Apartment. Finally, there is no evidence to support the conclusion that the debtor intended (or could afford) to remain as the rent-stabilized tenant in the Apartment after Tash left.  According to her bankruptcy schedules, she did not project any future income, (Petition, Schedule I), and her Statement of Financial Affairs represented that she had not earned any income since the beginning of 2008.

But assuming that the debtor was an "illusory" tenant, the Landlord has demonstrated that it is entitled to an order annulling the automatic stay.  The bankruptcy court can retroactively validate a void act by annulling the automatic stay.  See Eastern Refractories Co., 157 F.3d at 172.  Several factors inform the Court's decision: (1) whether the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) whether the debtor has acted in bad faith; (3) whether there was equity in the property of the estate; (4) whether the property was necessary for an effective reorganization; (5) whether grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation; (6) whether the failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) whether the creditor detrimentally changed its position on the basis of the action taken.  In re Stockwell, 262 B.R. 275, 281 (Bankr. D. Vt. 2001); accord In re Marketxt Holdings, Corp., 428 B.R. 579, 589 (S.D.N.Y. 2010) (affirming bankruptcy court's application of Stockwell factors in retroactively annulling automatic stay).

7

This is essentially a private dispute involving an interest in property that is not necessary for reorganization (this is a chapter 7) or of any value to the estate; the debtor's trustee filed a report of no distribution.[6]  Furthermore, the Landlord in a chapter 7 is generally entitled to continue pre-petition litigation to prosecute an eviction proceeding against the debtor because the litigation has no impact on the estate and does not involve property that the estate can use. Touloumis, 170 B.R. at 828.  Finally, the Landlord has expended time and money evicting Tash and the debtor and removing their property.  Requiring the Landlord to relitigate the eviction would add additional expense.

The only question is whether the Landlord knew about the bankruptcy, and hence, the automatic stay, when it prosecuted the eviction proceeding against the debtor.  A related question is whether the Landlord knew about this Court's March 11, 2011 order staying interference with her property when it continued to remove her personal property.  The debtor did not schedule her tenancy or list the Landlord as a creditor, and as noted above, the Landlord's attorney insists that the debtor did not disclose her bankruptcy proceedings during the nonpayment proceeding.[7]  Instead, she first mentioned bankruptcy in March at the time of the eviction when she advised the City Marshal that she had filed for bankruptcy in 2010, but the stay had been lifted.  She

---

[6]   The debtor did not disclose the existence of her "illusory" tenancy during the bankruptcy, but the tenancy is not something the trustee could have assumed and assigned.  In re Touloumis, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994) ("A residential lease, while theoretically an asset of the estate, is not one that a Chapter 7 trustee will generally assume and assign.").

[7]   The debtor listed Jeffrey Chancas, Esq. and his firm on the creditor matrix, and the Certificate of Notice appended to the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines, dated Apr. 29, 2010, (ECF Doc. # 7), indicates that he received notice of the bankruptcy case.  Mr. Chancas and his firm represent the Landlord, but they also represented a different landlord, Paul Tomaselli c/o Joseph Bodino, in the debtor's previous bankruptcy (Case No. 09-16862).  The debtor scheduled Tomaselli as an unsecured creditor in this case, and I assume that is why she listed Chancas on the matrix.  Neither Chancas nor his firm appeared for the Landlord in the nonpayment proceeding.

thereafter submitted an affidavit to the Civil Court in support of her order to show in which she stated that she had filed a motion to <u>reopen</u> her bankruptcy case. The debtor, an attorney, understood the import of the bankruptcy stay, but nothing in the record indicates that she advised the Civil Court or the Landlord of a <u>pending</u> bankruptcy during the nonpayment proceedings or prior to the eviction.

The debtor nonetheless insists that the Landlord knew about her bankruptcy. At the March 25, 2011 hearing, I informed the parties that I would treat the Landlord's opposition as a motion to annul the stay, and granted the debtor the opportunity to submit a written response telling me anything she wanted me consider. I specifically warned her that if she contended that the Landlord knew about her pending bankruptcy, her opposition should state who she told, when and what she said. Ignoring the admonition, her Affirmation in Opposition to Lift Stay, dated Apr. 4, 2011, at ¶ 5 (ECF Doc. # 27) merely states "the Landlord had knowledge of my bankruptcy before any damage was done to me, my rights, and my property and they continued to act in bad faith by continuing to remove my property even though it was against the order of this Court."

I conclude based upon the record that she is unable to identify any evidence that would support her contention that the Landlord knew up to the time of her eviction that she was a debtor in a pending bankruptcy case, and no purpose would be served by taking testimony on the question. In addition, although the removal of Tash's and her property took three days, or until March 12, 2011, the Landlord did not receive notice of this Court's stay until two days later. Under the circumstances, the debtor's motion to be restored to the Apartment is denied, the Landlord's motion to annul the automatic stay <u>nunc pro tunc</u> to April 29, 2010 is granted, all stays entered by the Court are vacated and the Clerk is directed to close the case.

9

So ordered.

Dated: New York, New York
April 13, 2011

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge